United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 25, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 04-40734

———————————————

FRED TARVER,

Plaintiff - Appellee,

versus

CITY OF EDNA et al.,

Defendants,

RANDY CRIDER, Individually and as Chief of Police of City of Edna;
KENT BUBELA, Individually,

Defendants - Appellants.

———————————————————————————

Appeal from the United States District Court
For the Southern District of Texas

———————————————————————————

Before JONES, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This case involves an interlocutory appeal from the district court's partial denial of summary

judgment. Two police officers asserted qualified immunity for claims arising out of an incident where

they placed plaintiff-appellee Fred Tarver, Sr. ("Tarver") in a police car during a custody dispute.

In his complaint, brought under 42 U.S.C. § 1983, Tarver sued the City of Edna and the officers,

Police Chief Randy Crider and Officer Kent Bubela, for unlawful arrest and excessive force. For the reasons set forth below, we reverse and dismiss in part and affirm and remand in part.

## I. FACTS AND PROCEEDINGS

On August 1, 2001 in Edna, Texas, a marital dispute between Freddie Tarver, Jr. ("Freddie") and Christina Tarver ("Christina") culminated with Freddie leaving for his parents' house with the couple's two-year-old son, Dylan Tarver ("Dylan"). When Freddie left, Christina called the Edna Police Department and spoke with an officer who explained that the police could not intervene because Freddie had lawful custody of Dylan. The next morning, Christina went to Kidz World, a daycare center owned by Freddie's parents, Tarver and his wife, Vera, where Christina believed Dylan would be. When Christina arrived, she confronted Vera, who explained that Freddie had left Dylan in her care and that she would not be returning the child to Christina. When Christina told Vera that she had the right to take Dylan, Vera fled the facility with the child.

Christina then telephoned the Edna Police Department a second time, requesting assistance in light of the new circumstances. The department dispatched Officer Bubela to Kidz World, where he met with Christina. After hearing Christina's account of the events, Officer Bubela requested that one of the Kidz World employees call Vera and ask her to return with Dylan. After the employee reached Vera, Officer Bubela informed her that if she did not return to the center with Dylan, she could be subject to criminal prosecution. Vera hung up on Officer Bubela but contacted Freddie to inform him that she was returning to Kidz World with Dylan and that he should come there to pick up Dylan.

When Vera reached the center, Officer Bubela reiterated that she must return Dylan to Christina, but Vera again refused. Tarver arrived about this time. Chief Crider arrived within a few

2

minutes to assist Officer Bubela at the scene. After ascertaining the relevant information, Chief Crider informed those present that Dylan needed to be returned to Christina.

Many of the remaining facts are in dispute. Ultimately, Chief Crider directed Officer Bubela to arrest[1] Tarver, who was never read his rights. The officers claim that Tarver had repeatedly refused to relinquish Dylan, at one point stating that he would not release Dylan until the officers arrested him. Tarver denies making this statement and alleges that he never attempted to keep Dylan from his mother or the officers. Tarver alleges that while he was calling Freddie's attorney on Vera's cell phone, the officers knocked the phone from his hands and forced handcuffs on him.

The officers contend that because Tarver resisted, Crider assisted Bubela in handcuffing Tarver. Because of Tarver's size, the officers linked two pairs of handcuffs together to provide him more room. When the officers placed Tarver in the back of the police car, he lay down at a 45-degree angle because there was insufficient room for his legs behind the front seat. Tarver alleges that when Vera informed the officers that Tarver had suffered a stroke, was diabetic, and had recently had surgery, Officer Bubela repeatedly replied, "I don't care."

Because the car's air conditioner was turned off (according to Tarver), and Tarver was feeling hot and distressed, he began tapping on the police car window with his feet. Vera, who was speaking with Chief Crider at the side of the car, walked over and opened the vehicle's back door to check on Tarver. She asserts that Officer Bubela rushed over and slammed the car door on Tarver's foot, knocking off his shoe and injuring his back.

---

[1] Although the officers admit Chief Crider used the word "arrest," they contend that Tarver was merely detained and not arrested.

Freddie then arrived and had Chief Crider speak with Freddie's attorney on his cell phone. Freddie informed Officer Bubela that his father suffered from numerous medical ailments and appeared to need some air. According to Freddie, Officer Bubela angrily told him that he didn't care. Seeing that Tarver was red-faced and sweating profusely, Freddie opened the police car's back door to give Tarver some air. Because Tarver's head and neck were propped up against the door, his head fell out of the car when Freddie opened the door. Officer Bubela hurried over and shut the car door. According to Tarver, Officer Bubela slammed it on his head, causing the door to bounce back. When Freddie protested, Officer Bubela, allegedly angrily responded that he didn't care because Tarver was not his father. Chief Crider concluded his conversation with Freddie's attorney, and Tarver was released.

Tarver filed suit against Chief Crider, Officer Bubela, and the City of Edna under 42 U.S.C. § 1983, claiming that the officers violated his Fourth and Fourteenth Amendment rights by arresting him without probable cause and by using excessive force in three instances: handcuffing him, slamming the police car door on his foot, and slamming the car door on his head. Tarver averred that he suffered physical injuries, emotional pain and suffering, mental anguish, headaches, and depression, and required surgery as a result of the officers' violations of his clearly established rights.

The officers moved for summary judgment based on qualified immunity. The district court granted only Chief Crider's motion for summary judgment as to the excessive force claims regarding the police car door based on the fact that Chief Crider was not involved in closing the door. The court denied the officers' other summary judgment motions and the officers timely appealed.

## II. STANDARD OF REVIEW

4

We review the district court's summary judgment decision *de novo*. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); FED. R. CIV. P. 56. In making this determination, we review the facts in the light most favorable to the nonmoving party. *In re Millette*, 186 F.3d 638, 641 (5th Cir. 1999).[2]

## III. DISCUSSION

In performing our qualified immunity analysis, we must first determine whether Tarver has alleged a violation of a constitutional right; if so, we turn to whether the officers' conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The second prong of the analysis "'is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002) (emphases omitted) (quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998)). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### A. Unlawful Arrest Claim

Tarver first alleges that his constitutional rights were violated when he was unlawfully detained. As an initial matter, the parties dispute whether Tarver was temporarily arrested or merely

---

[2] We note that although as a general rule interlocutory review of district court decisions is not permitted, in the case of qualified immunity this Court has jurisdiction to review denial of summary judgment, so long as that determination turns on a matter of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 (1985); *Feagley v. Waddill*, 868 F.2d 1437, 1439 (5th Cir. 1989).

5

detained. While Tarver claims that he was subject to arrest, which requires probable cause, U.S. CONST. amend. IV, the officers claim that their conduct amounted to a *Terry* stop, which is constitutional if supported by a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Tarver argues that the officers lacked either probable cause to arrest him or reasonable suspicion to detain him because he never had possession or control of Dylan at any time during the incident. The officers contend that their conduct—whether it amounted to a *Terry* stop or an arrest—was lawful. They assert that even if their conduct violated Tarver's constitutional rights, they acted as objectively reasonable officers.

We conclude that the officers are entitled to qualified immunity regardless of whether Tarver was arrested or merely detained. Tarver cannot satisfy the second prong of the qualified immunity analysis because even arresting Tarver was not objectively unreasonable in light of the circumstances surrounding the incident. A police officer who reasonably but mistakenly concludes that he has probable cause to arrest a suspect is entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Tarver does not dispute that it is clear law that a child's parents, rather than his grandparents, are his primary custodians. *See Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). As the district court recognized, the officers were "confronted with a situation where the mother of the child in question claimed that another individual was keeping her son from her. Since that other individual was not the child's parent, a reasonable officer could believe that the individual was, in some way, interfering with the mother's custody of the child." *Tarver v. City of Edna*, Civ. No. V-03-39, slip op. at 12 (S.D. Tex. May 11, 2004).

6

The district judge concluded that because Vera was the party responsible for physically keeping Dylan from Christina, she was the individual who was impermissibly interfering with Christina's custodial rights. We find that even if Tarver did not have physical possession of Dylan, the officers had a reasonable justification for arresting Tarver. Along with Vera, Tarver repeatedly attempted to speak to the officers to persuade them not to give the child to his mother.

While many facts concerning the incident are in dispute, none is material;[3] it is clear that Tarver had a significant role in the tense situation the officers were trying to resolve. Given the officers' reasonable belief that Dylan's mother, rather than his grandparents, should have possession of him, and the fact that Tarver was indisputably involved in hindering the officers' attempts to return Dylan to Christina, the officers reasonably "conclude[d] that the suspect had committed or was committing an offense." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (citation omitted) (defining probable cause, which is based on the totality of the facts and circumstances). Tarver's constitutional rights were not violated by the officers' actions in either arresting or detaining him.

**B.    Excessive Force Claims**

Tarver alleges three occurrences of excessive force: handcuffing, slamming the police car door on his foot, and slamming the car door on his head. To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly

---

[3] In his brief, Tarver repeatedly states that before he was arrested, Dylan had already been returned to Christina. This assertion, however, is not supported by the record. Although Tarver points to Vera's deposition as evidence, Vera merely describes how at some point during the entire incident, Dylan was transferred from her car to Christina. However, she never even *suggests* that this transfer took place prior to Tarver's arrest.

Furthermore, even if Christina had physical possession of Dylan before Tarver's arrest, we do not find this fact determinative of the officers' probable cause to arrest Tarver. Tarver never alleges, and the record does not support, that at the time he was arrested the custody dispute was no longer ongoing or Christina was free to leave with Dylan.

excessive, and (3) the excessiveness of which was clearly unreasonable. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994). While the district court should have granted the officers summary judgment as to Tarver's handcuffing claim, it correctly determined that Officer Bubela is not entitled to qualified immunity as to the latter two excessive force claims.

**1.    Handcuffing**

Tarver alleges that he suffered "acute contusions of the wrist," and psychological injury from being handcuffed. He argues that because the officers lacked reasonable suspicion or probable cause to detain or arrest him, any force used against him was excessive. The officers respond that any bruising Tarver may have incurred was caused by wriggling around in the police car and kicking the window. They also assert that minor injuries from handcuffing do not provide a basis for § 1983 liability.

Based on Tarver's description of the officers' conduct and his *de minimis* injuries, we conclude that Tarver cannot establish that his handcuffing constituted excessive force. Tarver does not contend that the officers maliciously or even purposely used the handcuffs to inflict harm upon him. Instead, Tarver makes the inapposite argument that his handcuffing was excessive because the officers were not justified in taking any action against him. Whether the officers had a right to handcuff Tarver goes to his unlawful arrest claim, disposed of in the previous section.

Although we no longer require "significant injury" for excessive force claims, *id.*, the injury must be more than *de minimis*. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). In *Glenn v. City of Tyler*, we held that "handcuffing too tightly, without more, does not amount to excessive force." 242 F.3d 307, 314 (5th Cir. 2001); *accord Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) (reaffirming a prior holding requiring medical records establishing permanent injury

before allowing the application of handcuffs to give rise to an excessive force claim). As Tarver does not allege any degree of physical harm greater than *de minimis* from the handcuffing, we find that he has not satisfied the injury requirement of a § 1983 claim.

Tarver's claim of psychological injury also fails. Although psychological injuries can serve as a basis for § 1983 liability, *Flores v. City of Palacios*, 381 F.3d 391, 400–01 (5th Cir. 2004), Tarver does not demonstrate that he suffered psycho logical injury from the handcuffing or that the handcuffing was excessive or unreasonable. Because Tarver has not established that his constitutional or statutory rights were violated when he was handcuffed, the officers are entitled to qualified immunity.

**2.      Slamming the door on Tarver's foot and head.**

We recognize that the doctrine of qualified immunity allows officers to perform their duties effectively and with minimal social costs. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). Qualified immunity protects objectively reasonable officials from both personal liability and the expense of trial and discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Viewing all the facts in Tarver's favor, we conclude that he offers summary judgment evidence sufficient to create a genuine fact issue as to whether Officer Bubela's conduct in slamming the door was objectively unreasonable in light of clearly established law.      As to the first step of the qualified immunity analysis, Tarver has made out the three elements necessary for an excessive force claim. The first two prongs are not at issue: The officers do not dispute at this preliminary stage that, as reflected in medical documentation, Tarver suffered numerous injuries following the August 2, 2001, incident. For example, Dr. James B. Shook evaluated Tarver o n several occasions and concluded that "the incident Mr. Tarver experienced on August 2, 2001 was responsible for causing encroachment of the peripheral nerves in

9

the cervical spine level and requiring the patient to undergo a second surgical procedure." Neither do the officers deny that any injuries Tarver incurred that day were caused by the car door. Although a factfinder might ultimately conclude that Tarver's prior health conditions contributed to the ailments that Tarver alleges have developed from the injuries, Tarver's summary judgment evidence adequately establishes that his injuries that day were caused solely by the conduct of Officer Bubela rather than from a preexisting condition or an action of a third party. *See Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989) (en banc).

Officer Bubela argues that there was no constitutional violation because his conduct was not unreasonably excessive. He states that on each occasion that he "opened and closed the door to the police car, he did so only to provide aid to and maintain custody and control of [Tarver] and for no other purpose." This version of how and why the officer closed the police car doors probably does not support a finding of excessive force.

However, Tarver's adequately supported depiction of Officer Bubela's conduct raises a question of material fact as to whether his behavior was unreasonably excessive. Tarver contends that Officer Bubela intentionally and angrily slammed the police car door, once on his foot and again on his head. According to Tarver and several witnesses, Vera and Freddie were not trying to interfere with the officers' efforts to keep Tarver in custody. They were merely checking on his well-being and trying to provide him with ventilation after Officer Bubela refused to open the windows or activate the air conditioning. Vera— and even Christina, Freddie's estranged wife—testified that prior to Freddie's opening the door, the scene was calm and Freddie approached Officer Bubela about Tarver's condition. Freddie testified that based on Officer Bubela's demeanor and repeated angry comments, he concluded that the officer intentionally slammed the door on Tarver's head.

10

To determine the objective reasonableness of an officer's use of force, "[w]e pay 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998) (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In the case at hand, the severity of the crime at issue was minimal, Tarver did not pose an immediate threat to anyone's safety, and according to the testimony of four witnesses, there was no risk of Tarver trying to escape police custody.

While the trier of fact might ultimately conclude that qualified immunity is warranted because reasonable officers could disagree about whether slamming the doors, either intentionally or without first checking on the position of Tarver's foot or head, was not unreasonable under the circumstances, this decision should not be made at the summary judgment stage. Any credibility determination made between the officers' and Tarver's version of events is inappropriate for summary judgment. *Bazan v. Hidalgo County*, 246 F.3d 481, 492 (5th Cir. 2001) (holding that a case involving a material dispute about a witness's credibility should not be resolved on summary judgment). Based on Tarver's version of events, it is not clear as a matter of law that slamming the door on Tarver's head and foot was not unreasonable.

Under the second step of qualified immunity analysis, Tarver must establish that Officer Bubela's conduct was unreasonable in light of clearly established law. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The cent ral concept is that of 'fair warning': The law can be clearly established despite

11

notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotations and citation omitted).

On August 2, 2001, it was clearly established that Tarver had a constitutional right to be free from excessive force during an investigatory stop or arrest. *See Graham,* 490 U.S. 393–94. As discussed in the first step of the qualified immunity analysis, under Tarver's version of events it is not clear as a matter of law that Officer Bubela acted reasonably in slamming the doors on Tarver. At a minimum, determining whether Officer Bubela's conduct was objectively reasonable requires factfinding and credibility assessments; dismissal is thus inappropriate at the summary judgment phase. Because "disputed factual issues material to immunity are present," we lack jurisdiction to review the district court's denial of summary judgment as to these two excessive force claims. *Feagley v. Waddill*, 868 F.2d 1437, 1439 (5th Cir.1989).

## IV. CONCLUSION

We hold that the district court erred in denying qualified immunity to Chief Crider on all of Tarver's claims and to Officer Bubela on Tarver's claims for unlawful arrest and excessive force in handcuffing him. We therefore REVERSE these rulings of the district court and DISMISS these claims. Concluding, however, that the district court correctly denied summary judgment based on qualified immunity on Tarver's remaining excessive force claims against Officer Bubela because of the presence of genuine issues of material fact, we lack appellate jurisdiction to hear an interlocutory review of these rulings. We therefore DISMISS Officer Bubela's appeal as to Tarver's remaining claims of excessive force in closing the car door and REMAND the case to the district court for

12

further proceedings.  REVERSED and DISMISSED IN PART; AFFIRMED and REMANDED IN

PART.