**Elizabeth TEAGUE as next friend of C.R.T., Plaintiff,**

v.

**TEXAS CITY INDEPENDENT SCHOOL DISTRICT, Defendant.**

**No. CIV.A. G–04–558.**

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 17, 2005.

Jack D. Ewing, Jr., The Ewing Law Firm, Texas City, TX, for Plaintiff.

Jeffrey L. Rogers, Clay T. Grover, Feldman & Rogers, Houston, TX, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

This case arises out of a sexual assault by another student against C.R.T. at Texas City High School. Now before the Court is the Motion for Summary Judgment by Texas City Independent School District ("Defendant"). For the reasons given below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. Background and Procedural History

Elizabeth Teague ("Plaintiff"), the stepmother of C.R.T., alleges in her Complaint that another student at Texas City High School pushed C.R.T., an 18-year-old with Down's Syndrome, into the boys' restroom where he sexually assaulted her. She then alleges that school officials forced C.R.T. to remove her clothing as part of their investigation even though Plaintiff had not arrived at the school. Plaintiff states that Defendant is liable under 42 U.S.C. § 1983 for failure to supervise and properly train the staff, leading to the assault on C.R.T., and also for using excessive force in demanding that C.R.T. remove her clothing.

On December 7, 2004, the Court denied Defendant's Motion to Dismiss. At that time, the Court had to take the alleged facts as true. Defendant's summary judgment evidence presents a vastly different picture. According to Defendant, C.R.T.'s teacher began looking for her immediately after the tardy bell rang and C.R.T. had not appeared in class. The girls' and handicapped students' restrooms were empty, and a boy answered that he was using the boys' room. After searching the special education classrooms for several minutes, the teacher went back to the boys' restroom, thinking that C.R.T. might be in there. She knocked on the door, and C.R.T. ran out and into the girls' restroom. The teacher found another special education student in the boys' room. The teachers and staff who saw C.R.T. immediately after this said that she appeared unharmed and calm, except that she knew that she had been caught somewhere that she should not have been. She was taken to a staff member's office for questioning, and she described the sexual activities in which she and the boy had engaged. No staff member threatened her or raised their voice to her. She asked to go to the restroom, and a staff member recom-

mended that her female teacher go with her to see if she could observe any blood or other sign of physical harm. This teacher had previously helped C.R.T. in the restroom with hygiene issues, so she did not believe that C.R.T. would feel uncomfortable with her presence. The teacher observed C.R.T.'s panties when C.R.T. pulled them down to use the toilet, and they appeared clean and dry. The teacher did not touch C.R.T. or order her to remove any clothing. When Plaintiff arrived, she was visibly upset, at which time C.R.T. also became upset and started crying for the first time. Several teachers and administrators swore affidavits or gave depositions supporting these facts. (Def.'s Exs. A–C; Pl.'s Exs. A–B.) The small portion of Plaintiff's deposition testimony included with Plaintiff's Response supports her version of the story, but that is the only evidence on her side. (Pl.'s Ex. H.) Plaintiff took depositions from all the teachers and staff members present, but Plaintiff only included those sections of the depositions dealing with locks on the bathroom doors, hallway monitoring, and other matters; Plaintiff did not include any deposition testimony from these witnesses about the central events of the case.

## II. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510.

Nevertheless, if the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## III. Analysis

42 U.S.C. § 1983 creates a civil remedy for those who have been deprived of their federal rights under color of law. The plaintiff must show a violation of a constitutional right or a right created by federal law and that the violation was committed by a person acting under color of state law. *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998).

### A. Failure to Supervise

Plaintiff's first claim is that Defendant failed to supervise the students properly and/or failed to train the teachers and staff properly, and this led to the assault on C.R.T. by the other student. Even if the state actor failed to take some action, the state actor is only liable for the actions of a third party if there is a special relationship between the victim and the state actor. *See DeShaney v. Winnebago County Dep't. of Soc. Servs.*, 489 U.S. 189, 198–200, 109 S.Ct. 998, 1004–05, 103 L.Ed.2d 249 (1989); *Walton v. Alexander*, 44 F.3d 1297 (5th Cir.1995). In the Order Denying Defendant's Motion to Dismiss, the Court found

that a special relationship might exist between C.R.T. and Defendant. At that time, though, the Court relied entirely on the representations of Plaintiff in her Complaint, which portrayed a severely traumatized special-education student forced to undergo an intrusive search. Because of the egregious nature of the claims, the Court was reluctant to dismiss Plaintiff's claims without giving her an opportunity to engage in discovery and further development of the facts.

■ Now, though, it appears that the events were remarkably benign, at least with regard to Defendant's activities. Plaintiff has produced only three pages of her deposition in which she describes what C.R.T. told her to support her sensational version of the facts. Plaintiff has admitted that C.R.T. was 18 at the time and not subject to compulsory attendance laws. C.R.T.'s school records show that the teachers and staff believed that she could understand and follow school rules. They did not believe that she required one-on-one supervision to make it safely from one special education classroom to another special education classroom 30 feet away. One staff member testified that C.R.T. functions at the level of a 13–year–old.[1] (Chapa Dep. at 6.) Plaintiff has not produced any evidence to contradict these facts.

While the Court still believes that, in some circumstances, a special relationship may exist between a school district and a special education student, these circumstances do not rise to that level. The Court's prior decision as to the existence of a special relationship, which was based on a distorted picture of the events, is

therefore **VACATED**, and Defendant's Motion for Summary Judgment on Plaintiff's failure to supervise claim is **GRANTED**.

### B. Excessive Force

■ Plaintiff's second claim is that Defendant used excessive force in demanding that C.R.T. remove her clothing in front of a teacher without her parent present. The constitutional right to be free from excessive force during a detention or search by a state actor is clearly established. *See Tarver v. City of Edna*, 410 F.3d 745, 753–54 (5th Cir.2005). To show that a violation of this right occurred, Plaintiff must show that C.R.T. suffered an injury "which resulted directly and only from a use of force that was clearly excessive" and that the excessiveness was "clearly unreasonable." *Id.* at 751.

■ However, to succeed against a governmental entity such as Defendant, Plaintiff must also show that an official policy or custom caused the injury. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Defendant is not automatically liable for the torts of its employees absent such an official policy or custom. *See id.* As explained in the Court's prior Order, only the policy decisions of officials with final policymaking authority can subject a school district to liability. *See Doe v. Dallas I.S.D.*, 153 F.3d at 216. Here, the final policymaking authority was the Board of Trustees. *See id.* It was not the teachers, principal, or other staff members at Texas City High School. Defendant cannot therefore be

---

1. The Fifth Circuit held that a special relationship did not exist between a school district and a thirteen-year-old student who was raped by a janitor. *See Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir.1997). Therefore, to the extent that age reflects maturity and judgment, the age of thirteen-whether functional or chronological-is not enough under Fifth Circuit precedent to create a special relationship, even in conjunction with compulsory attendance laws.

held liable for any "policy" developed by those actors.

■ Even after a specific invitation to do so in the Court's prior Order, Plaintiff has not alleged the existence of an official policy or custom requiring students to submit to strip-searches without the consent of their parents. In fact, Defendant has presented its official policy *against* unreasonable and coerced searches. (Def.'s Ex. E–5.) The policy sets out the circumstances in which a search is reasonable, and it states that other searches may not be conducted without the consent of the student. Consent may not be obtained by coercion.

Defendant cannot be held liable in these circumstances. Not only has Plaintiff failed to produce evidence of an official policy causing the injury, she has not refuted Defendant's evidence that a contrary policy exists. For that reason, Plaintiff's claim fails as a matter of law.

Finally, Defendant's evidence casts serious doubt on Plaintiff's contention that Defendant's employees used any force against C.R.T., whether physical or psychological, and also on Plaintiff's contention that C.R.T. suffered any real injury because of the search. A decision as to the true facts would require a weighing of credibility, which the Court cannot do on a Motion for Summary Judgment. The case nonetheless appears far less shocking than Plaintiff's Complaint makes out. Defendant's Motion for Summary Judgment on Plaintiff's excessive force claim is **GRANTED**.

IV. Conclusion

Defendant's Motion for Summary Judgment is **GRANTED** because there is no genuine question of material fact as to the existence of a special relationship between C.R.T. and Defendant or as to the existence of a policy allowing unreasonable strip-searches of students. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

In the future, the Court admonishes Plaintiff and her counsel to consider the implications of giving a highly-sensationalized rendition of the facts in a Complaint that later appears to be groundless. Had the Court denied this Motion, C.R.T. would likely have had to testify about events that were at the very least embarrassing, if not traumatic, and submit to a thorough and grueling cross-examination. The Court cannot imagine that this would be a positive experience for any person, but especially not for a person with limited mental capabilities.

Also, in going through the evidence in the case, the Court discovered that C.R.T.'s parents failed to attend C.R.T.'s Admission, Review, and Dismissal Committee meeting in March 2004 even after being notified three times by the school, instead leaving C.R.T. to fend for herself. (Def.'s Ex. A–1 at 43.) If Plaintiff is truly concerned about C.R.T.'s well-being and if C.R.T. is so incapable of taking care of herself, Plaintiff should make an effort to attend such important meetings on C.R.T.'s behalf. This behavior does not comport with the Court's perception of good parenting and advocacy.

Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date. A Final Judgment will be issued contemporaneously with this Order.

**IT IS SO ORDERED.**