United States Court of Appeals
Fifth Circuit

**F I L E D**

December 1, 2005

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 04-31053

N'YICHI BYERS,

Plaintiff-Appellant,

versus

CITY OF EUNICE; RONALD PAPILLION, individually and in his
official capacity as an employee of Eunice Police Department,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
(6:03-CV-1523-TLM-MEM)

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT, District Judge.[*]

PER CURIAM:[**]

N'Yichi Byers challenges the summary judgment awarded Detective Papillion and the City of Eunice, Louisiana. Among other claims, Byers sued pursuant to 42 U.S.C. § 1983 for violations of her civil rights, stemming from her arrest for alleged participation in a felony theft. The district court held, *inter alia*, the Detective entitled to qualified immunity. **AFFIRMED.**

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 12 November 2001, a theft occurred at Leger's Grocery Store in Eunice; Byers was the cashier. Following an initial investigation by other Officers of the Eunice Police Department, Detectives Papillion and Kennedy took over the investigation, the results of which caused them to believe Byers committed the crime. John Clay, an inmate in the Eunice County Jail, asked to speak with Detective Papillion in December 2001. He told Detectives Papillion and Kennedy: while in the store on the day of the theft, he witnessed Byers take a box from behind the counter and give it, as well as money from the cash register, to Phillip Hebert in a set-up burglary. Clay also implicated Lindsey Freeman in the theft. Detective Papillion spoke with Freeman, who admitted his involvement and corroborated Clay's statement that Byers and Hebert were also involved.

Relying upon Clay's and Freeman's statements, Detective Papillion sought an arrest warrant for Byers from a city judge, who determined probable cause existed and issued the warrant. After Byers was arrested, another judge found probable cause and set bail.

At Byers' trial for felony theft in 2002, Clay recanted his earlier statement and testified: he had *not* been in the store on the day of the theft; he had lied when he implicated Byers; and

Detective Papillion told him what to say during the December 2001 interview. Byers was found not guilty.

Byers then filed this action in state court against Detective Papillion, in both his individual and official capacities, and the City of Eunice, claiming, pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, violations of numerous constitutional rights. Byers also raised state-tort claims for slander, false arrest, false imprisonment, and malicious prosecution.

Following removal to district court, summary judgment was awarded against Byers; her claims were dismissed with prejudice. The court held: in his individual capacity, Detective Papillion was protected by qualified immunity because probable cause supported Byers' arrest; Byers failed to establish the requisite constitutional violation for proceeding against the Detective in his official capacity, or the City; and Byers' state-law claims were precluded because she could show neither malice nor a lack of probable cause.

## II.

Byers has briefed neither (1) her claims against the City and Detective Papillion, in his official capacity, nor (2) her state-law claims. They are waived. *See* FED. R. APP P. 28(a); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("[O]nly the issues presented and argued in the brief are addressed".). Thus, the only issue is the summary judgment awarded the Detective in his

3

individual capacity; Byers contends it should not be granted based on qualified immunity.

A summary judgment is reviewed *de novo*, viewing the facts in the light most favorable to the non-movant. *E.g.*, **Freeman v. County of Bexar**, 210 F.3d 550, 553 (5th Cir.), *cert. denied*, 531 U.S. 933 (2000). Such judgment is proper if there exists no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986); **Freeman**, 210 F.3d at 553.

Qualified immunity "shield[s public officials] from undue interference with their duties and from potentially disabling threats of liability". **Harlow v. Fitzgerald**, 457 U.S. 800, 806 (1982); *see* **Sanchez v. Swyden**, 139 F.3d 464, 467 (5th Cir.) (noting "the deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties"), *cert. denied*, 525 U.S. 872 (1998). Accordingly, a qualified immunity defense should be resolved as early as possible in the litigation. *See* **Brown v. Lyford**, 243 F.3d 185, 191 (5th Cir.) ("Since qualified immunity is immunity not only from damages but also from suit itself, it is to be determined as early as possible."), *cert. denied*, 534 U.S. 817 (2001). To overcome qualified immunity at the summary-judgment stage, Byers must satisfy a two-prong test.

A.

First, she must state a claim for the violation of "a 'clearly established' constitutional or statutory right" under current law. *Sanchez*, 139 F.3d at 466 (citing *Harlow*, 457 U.S. at 818); *see* *Siegert v. Gilley*, 500 U.S. 226, 227 (1991) (requiring plaintiffs to "state a claim for violation of any rights secured to [them] under the United States Constitution"); *see also* *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("This must be the initial inquiry."); *Siegert*, 500 U.S. at 231 (stating that, at the summary-judgment stage, plaintiffs need only "allege the violation of a clearly established constitutional right").

Byers appears to claim wrongful or illegal arrest. She maintains: because the Detective lacked probable cause to procure a warrant for her arrest, her Fourth Amendment right (through the Fourteenth Amendment) to be free from unreasonable seizure was violated. *See* *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988) ("Claims of false arrest ... involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause."). Byers satisfies the first prong.

B.

For the second prong, Byers must show: (1) the right was clearly established when the violation occurred; and (2) the official's conduct was "objectively unreasonable in the light of

5

that then clearly established law". *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998); *see* *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact."); *Felton v. Polles*, 315 F.3d 470, 478 (5th Cir. 2002) ("For the second prong ... 'the right ... alleged to have [been] violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations to *Anderson* in original).

1.

For a law to be "clearly established", for purposes of the second prong, it "is not enough" that a "broad general proposition" is well established. *Saucier*, 533 U.S. at 201-02.  Again, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (quoting *Anderson*, 483 U.S. at 640).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Here, "[t]he relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed" probable cause existed to seek an arrest warrant for Byers, "in [the] light of clearly established law and the information [the Detective] possessed". *Anderson*, 483 U.S. at 641. That Byers was not to be arrested without probable cause was clearly established, needless to say, long before the arrest in 2001. *Blackwell v. Barton*, 34 F.3d 298, 302-03 (5th Cir. 1994). Further, it was also clearly established that a police officer could not manufacture probable cause by using knowingly or recklessly false statements or omissions. *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir.) (requiring the excision of false information from a probable cause determination) (citing *United States v. Alvarez*, 127 F.3d 372, 374 (5th Cir. 1997)), *cert. denied*, 537 U.S. 910 (2002).

## 2.

This "clearly established" law provides the framework from which to examine, for summary-judgment purposes, the objective reasonableness of the Detective's conduct. Restated, the Detective is protected by qualified immunity unless a genuine issue of material fact exists for whether his actions were "objectively reasonable". *Goodson*, 202 F.3d at 736. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of

7

immunity be lost." **Malley v. Briggs**, 475 U.S. 335, 344-45 (1986) (internal citation omitted).

For this inquiry, we look to a *totality of the circumstances* surrounding an officer's probable-cause determination. **Mendenhall v. Riser**, 213 F.3d 226, 231 (5th Cir. 2000) (citing **Illinois v. Gates**, 462 U.S. 213, 238 (1983)), *cert. denied*, 531 U.S. 1071 (2001). The qualified-immunity standard gives officers flexibility for mistaken judgments "by protecting 'all but the plainly incompetent or those who knowingly violate the law'". **Id.** at 230 (quoting **Malley**, 475 U.S. at 341). Again, it is an objective standard. **Id.** at 231. In other words, as discussed *supra*, "[e]ven if officers of reasonable competence could disagree", an officer would still be entitled to qualified immunity. **Freeman**, 210 F.3d at 554; *see also* **Tarver**, 410 F.3d at 750.

Along this line, rather than operating with the benefit of hindsight, we consider the reasonableness *vel non* of an officer's conduct *at the time of arrest*. **Mendenhall**, 213 F.3d at 231. Accordingly, Clay's recantation at trial of his statement and Byers' being found not guilty have no bearing on our inquiry. **Id.** at 237. Again, we examine the information existing when the Detective sought the arrest warrant.

Nevertheless, Byers challenges the district court's failure to consider that recantation. As discussed, it is irrelevant to the Detective's probable cause determination at the time of arrest.

8

Moreover, Byers challenges the district court's excluding the expert testimony of her law-enforcement-procedures expert. That decision must be shown to be "manifestly erroneous". *Hayter v. City of Mount Vernon*, 154 F.3d 269, 273-74 (5th Cir. 1998). Byers fails to do so.

As part of our review, we must consider Byers' assertion that a genuine issue of material fact exists for whether the Detective attempted to set Byers up by providing false information to obtain an arrest warrant and by providing Clay all information regarding the theft. *See Freeman*, 210 F.3d at 553. This contention arises out of Clay's failure to identify Byers by name when interviewed by Detective Papillion in December 2001. Although Clay was unable to do so, he told the Detective he entered Leger's Grocery and witnessed the theft. *Before* the Detective provided Byers' name to Clay, the colloquy proceeded as follows:

> [Clay]: And I entered the store. There's this girl
> – I forgot her name.
> [Detective] Papillion: Uh.
> [Clay]: Uh, this short, heavy shaped girl.
> [Detective] Papillion: She works over there at Leger's?
> [Clay]: Yes sir. She's a cashier over there.
> [Detective] Papillion: Would that would uh that female would that be Niesha Bias [sic].
> [Clay]: Yes sir.
> [Detective] Papillion: Ok, and she was working that night?
> [Clay]: Yes sir.

Byers met this description. Based on this testimony and Freeman's corroborating statement, Detective Papillion's conduct in deeming Byers a suspect was *not* objectively unreasonable.

9

Byers fails otherwise to address the second prong; nowhere does she maintain the Detective acted objectively unreasonably in procuring the arrest warrant. Arguably, her claim is waived on this basis alone, as discussed *supra*.

In any event, when Byers' arrest was effected, the Detective and his fellow officers had learned that: Byers was working at the store when the theft occurred; Clay, a recurrent criminal, claimed to be an eyewitness and identified a person matching Byers' physical description as one of the participants, although he did not know her name; and Freeman implicated both Byers and himself in the crime. Although no physical evidence tied Byers to the theft, it was not objectively unreasonable for Detective Papillion to rely on the results of his investigation. Based on Freeman's independent corroboration of Clay's testimony, "officers of reasonable competence" would *not* agree that the Detective's conduct was objectively *un*reasonable. *See* **Freeman**, 210 F.3d at 554.

In sum, for summary-judgment purposes, Byers fails to satisfy the second prong of the qualified immunity analysis: the Detective's conduct was not objectively unreasonable in the light of then clearly established law. (Accordingly, we need not decide whether the state judge's independent assessment of probable cause for Byers' arrest broke the chain of causation for the false-arrest claim. *See* **Murray v. Earle**, 405 F.3d 278, 290-92 (5th Cir.), *cert.*

10

*denied*, 2005 WL 3144163 (U.S. 28 Nov. 2005) (No. 05-396); **Taylor v. Gregg**, 36 F.3d 453, 456 (5th Cir. 1994).)

III.

For the foregoing reasons, the judgment is

**AFFIRMED**.