# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 28, 2010

Lyle W. Cayce
Clerk

No. 09-60691

TAMMY WILLIAMS; EARL RUSSELL; CHERYL HAMBRICK,

> Plaintiffs - Appellees

v.

Sheriff JAMES A. RILEY, In His Official and personal capacities; STEVE ATKINSON, Individually and in His Official Capacity as Deputy Sheriff and Jail Administrator of Desoto County, Mississippi; LARRY GATLIN, Individually and in His Official Capacity as Deputy Sheriff and Jail Administrator of Desoto County, Mississippi,

> Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:05-CV-83

Before HIGGINBOTHAM, DAVIS, and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

This suit is brought by three prison officials who allege they were fired because they reported a case of prisoner abuse. We conclude that an earlier

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

panel's conclusion that questions of fact are present is the law of this case. We therefore dismiss this appeal.

## I. FACTS AND PROCEDURAL BACKGROUND

Tammy Williams, Earl Russell, and Cheryl Hambrick (collectively "the plaintiffs") were jailers at the DeSoto County Jail, with Russell serving as a Sergeant and direct supervisor of Williams and Hambrick. On December 27, 2004, Williams and Hambrick saw Sergeant Stephen Winters involved in a physical altercation with a prisoner, Victor Dockery. According to Williams, when Williams and Hambrick entered the jail, Winters was hitting Dockery, who was backed into the corner of an open jail cell. Williams and Hambrick entered the cell, diffused the situation, and handcuffed Dockery with his hands behind his back. Once Dockery was handcuffed, Williams and Hambrick stepped away. Winters then allegedly grabbed Dockery and began slamming his head against the wall. Williams attempted to stop Winters, but Winters continued beating Dockery against the wall. Eventually Winters stopped.

Williams and Hambrick verbally reported the incident to Russell. Russell told Williams and Hambrick to speak with Captain Brenda Stewart. Stewart advised Williams and Hambrick to write a report regarding the incident. The plaintiffs collectively had concerns about reporting the incident because they believed it was the jail administrator's tacit policy, contrary to the written policy, to discourage jailors from reporting cases of prisoner abuse. The plaintiffs reached this conclusion because another employee had been fired two months earlier for reporting that Winters assaulted an inmate. Moreover, the plaintiffs assert that Hambrick's husband, a former employee of the jail, had been told while working at the jail to falsify a report regarding a physical altercation with an inmate in order to cover up what might be considered inmate abuse. Despite their concerns about reporting the incident between Winters and Dockery,

No. 09-60691

Williams and Hambrick wrote the report and placed it under the Jail Administrator Steve Atkinson's office door on December 28, 2004.

The following day all three plaintiffs were written up for allegedly failing to properly perform their duties. Separate disciplinary hearings were held for each of the plaintiffs on December 29, 2004. Following the hearings, all three plaintiffs were immediately fired the same day.

In April 2005, the plaintiffs filed an action under 42 U.S.C. § 1983, seeking damages, against the Sheriff of DeSoto County, James A. Riley, and the Deputy Sheriffs and Jail Administrators, Steve Atkinson and Larry Gatlin, in their individual and official capacities (collectively "the defendants"). The plaintiffs' § 1983 action alleged, among other things, that they were fired in retaliation for exercising their First Amendment rights. In response, the defendants filed a motion to dismiss based on qualified immunity. The district court denied the defendants' motion to dismiss, stating that assuming the defendants "rigged the outcome of the plaintiffs' disciplinary hearing," the court could not possibly conclude that the defendants "acted reasonably under the circumstances." *Williams v. Riley*, 2006 U.S. Dist. LEXIS 46697, at *3 (N.D. Miss. 2006).

Following the district court's denial of the defendants' motion to dismiss, the Supreme Court issued *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006), in which it held that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." However, the Court noted that "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419. In determining whether employees were speaking as citizens or as pursuant to their official responsibilities, the Court stated:

> We reject, however, the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions.

3

No. 09-60691

> The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Id.* at 424–25.

After *Garcetti*, the defendants filed a motion to reconsider their previous 12(b)(6) motion to dismiss. The defendants cited the DeSoto County Sheriff's Operations Policy and Procedures manual ("Policy and Procedures manual") as imposing an official duty on the plaintiffs to "immediately report to the Department upon learning of any violation of established policies, procedures, guidelines and regulations or any other improper conduct which is contrary to the policy, orders, or directives of the Department . . . ." Defendants alleged that based on this duty, the plaintiffs' speech was not protected by the First Amendment under *Garcetti* and they were entitled to qualified immunity.[1] The plaintiffs responded by contesting whether they had an actual duty to report the incident, arguing that the tacit and enforced policy of the jail was opposite to the jail's written policy. Though "gravely troubled" by the outcome, the district court found that *Garcetti* precluded the plaintiffs from recovering when their statements were made pursuant to their official duties. *Williams v. Riley*, 481 F. Supp. 2d 582, 584–85 (N.D. Miss. 2007). Relying on the Policy and Procedures manual, the district court found that it was part of the plaintiffs' official duties to report the unlawful conduct of other jail employees. *Id.* at 584. Therefore, the

---

[1] There is a two-step inquiry for resolving government officials' qualified immunity claims: (1) a court must decide whether the facts alleged or shown are sufficient to make out a violation of a constitutional right; (2) the court must decide whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, if no constitutional violation is present, a government official is entitled to qualified immunity.

4

district court granted the defendants' motion to dismiss the case with prejudice under Rule 12(b)(6). *Id.* at 585.

The plaintiffs appealed the district court's dismissal. This court in *Williams v. Riley*, 275 F. App'x 385, 389 (5th Cir. 2008) (*Williams I*) (unpublished) (per curiam) vacated the district court's dismissal of the First Amendment claims, finding that there was a genuine issue of material fact as to whether the report was made "pursuant to [the plaintiffs'] official duties" because it was unclear whether filing reports about physical altercations between jail employees and prisoners was part of the official duties of the plaintiffs. "Although it may be presumed that an employee's official job duties at a reasonable sheriff's department would include reporting crimes perpetrated at work by department members, it is not clearly so here." *Id.* As such, the *Williams I* court remanded the plaintiffs' claim for further proceedings.

After taking discovery, the defendants filed a motion for summary judgment. The defendants asserted that the plaintiffs admitted that the Policy and Procedures manual required them to report incidents like the one that occurred between Winters and Dockery. Therefore, the defendants re-asserted that the plaintiffs' speech was not protected by the First Amendment under *Garcetti* and they were entitled to qualified immunity.

The district court denied the defendants' motion for summary judgment, stating that the plaintiffs demonstrated a triable issue of fact with regards to their claims against the defendants. The triable issue of fact was, as the *Williams I* panel held, whether the report was made pursuant to the plaintiffs' official duties.

The defendants timely filed the instant appeal of the denial of their motion for summary judgment based on qualified immunity. In response, the plaintiffs filed a motion to dismiss the appeal for lack of appellate jurisdiction, arguing

No. 09-60691

that a denial of qualified immunity based on factual disputes is not immediately appealable under the collateral order doctrine.

## II. STANDARD OF REVIEW

The court reviews the district court's summary judgment decision *de novo*. *Tarver v. City of Edna*, 410 F.3d 745, 749 (5th Cir. 2005) (citations omitted). In making this determination, the court reviews the facts in the light most favorable to the nonmoving party. *Id.* (citation omitted).

## III. ANALYSIS

"[A] district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law*, is an appealable 'final decision' within the meaning of 28 U. S. C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (emphasis added). However,

> A district court's decision to deny qualified immunity on a motion for summary judgment is "not appealable if [it is] based on a claim regarding the sufficiency of the evidence . . . . Therefore, if the district court concludes that the summary judgment record raises a genuine issue of material fact with respect to whether . . . qualified immunity is applicable, then that decision is not immediately appealable . . . ."

*Gobert v. Caldwell*, 463 F.3d 339, 344 (5th Cir. 2006) (citing *Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999)).

It is well established that an appellate court decision establishes "the law of the case" which must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to such issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."

6

*EEOC v. Int'l Longshoremen's Assoc.*, 623 F.2d 1054, 1058 (5th Cir. 1980) (citations omitted). *See also Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001); *Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir. 1989).

In *Williams I*, this court clearly concluded that whether the plaintiffs' report was made "pursuant to their official duties" was a question of fact. 275 F. App'x at 389. Thus, this is the law of the case unless one of the above exceptions applies. The only exception that could apply is the first exception, that a subsequent trial has produced substantially different evidence. In this case, however, the parties presented no substantially different evidence in the papers supporting the motion for summary judgment. The defendants continued to rely on the Policy and Procedures manual as evidence that it was within the plaintiffs' job description and duties to report the altercation. Although the defendants argue that the depositions of the plaintiffs taken during discovery is new evidence that supports the position that it is the jail's policy to require the reporting of any crimes perpetrated by employees, we disagree. In their depositions, the plaintiffs asserted that they were told "what happens in the jail stays in the jail" and that if they "would be humble and not open [their] mouth[s]" about the incident with Winters and Dockery, they would not lose their jobs. The plaintiffs further stated that at least one employee had been fired for reporting that Winters beat up an inmate, and that at least one employee had been directed to falsify a report regarding a physical altercation between a prisoner and a jail employee. The plaintiffs' depositions provide no new, substantially different evidence to render the law of the case inapplicable. Thus the law of the case—that whether the plaintiffs made their report pursuant to their official duties is a question of fact—must stand. It follows that the district court's order denying qualified immunity to the defendants was based

No. 09-60691

on the conclusion that a question of fact was present. The order is therefore not appealable.[2]

## CONCLUSION

For the above reasons, we GRANT the plaintiffs motion to dismiss this appeal for lack of jurisdiction and DISMISS the defendants' appeal.

GRANTED and

DISMISSED.

---

[2] The jurisdictional question in this case asks whether a material dispute of fact exists, and we honor the first panel's conclusion that it does. It described the fact question as "whether the speech was made pursuant to Plaintiffs' job duties." *Williams I*, 275 F. App'x at 390. But this was not an effort to phrase the Rule 49 interrogatory to be put to the jury. We leave it to the district court to decide how best to frame the question to the jury.

It is clear to us that *Garcetti* would not allow employers to create a formal policy, fire employees for following that policy, and then obtain protection from retaliation claims by asserting a qualified immunity defense – claiming a First Amendment free fire zone. Indeed, terminating an employee for doing exactly what he is told puts at issue whether the conduct was in fact pursuant to "official responsibilities."