# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 20, 2013

No. 12-60401

Lyle W. Cayce
Clerk

MARK A. ANDERSON,

Plaintiff - Appellant

v.

CITY OF MCCOMB, MISSISSIPPI;
GREGORY MARTIN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:10-CV-617

Before JONES, DENNIS, and HIGGINSON, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Former policeman Mark Anderson ("Anderson"), who accumulated over twenty years of service as a law enforcement officer in Mississippi, filed suit against the City of McComb and former police chief Martin (collectively, the "City"), and several unidentified defendants after he lost his job effective August 2009. We have read the briefs, heard oral argument, scrutinized pertinent parts

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 12-60401

of the record, and carefully considered the district court's thorough order granting summary judgment for the defendants on his claims. On his procedural due process claims, we reverse and remand because facts material to Anderson's status and rights are disputed and confusing.

In an atmosphere of animosity between McComb's then-mayor and then-police chief, Anderson was something of a pawn according to the record. When the police chief ordered him to work a long, late August weekend, Anderson declared to the City's personnel director, Ms. Isaac, his intention to use his accumulated leave and retire, or to "contemplat[e] retirement." Together, they ascertained his eligibility for state retirement benefits. Ms. Isaac quickly conveyed the information to City Administrator Lockley ("Lockley"), who interpreted the conversation as Anderson's intent to resign immediately. (At his deposition, Lockley was testy when asked to explain the difference between retirement and resignation.) Lockley informed Chief Martin that Anderson had resigned, and Martin apparently was all too willing to have Anderson gone from the force. Anderson, in the meantime, contacted the Mayor, who urged him to reconsider retirement. Anderson did not work as assigned on the weekend of August 28. At a Board of Selectmen meeting on September 8, the Mayor announced that Anderson had decided not to retire. Lockley later informed the Board, which has hiring and firing responsibilities over the police force, that to re-employ Anderson, given his "voluntary" separation, they would have to reinstate him at another Board meeting. That meeting occurred on September 22, but Anderson did not attend.

On September 16, pursuant to the Mayor's endorsement of his continued employment, Anderson showed up for his usual shift duty at 5:30 a.m., retrieved a City patrol car, and was out at work until Chief Martin procured a warrant for his arrest for unauthorized use of an official vehicle and impersonating a police officer. Anderson was arrested, released on bond, and underwent trial. The

state judge, however, remitted the charges against him "to the file" in order not to damage his career.

Anderson has received neither his accumulated leave pay nor disputed salary nor retirement benefits, and of course, he has not since worked for the City. His lawsuit included constitutional and state law claims. On appeal are the claims for unconstitutional false arrest on September 16 and for due process violations in the manner of his separation from the force, as well as Anderson's challenge to the district court's exclusion of a proffered expert witness.

### 1. False Arrest

A § 1983 constitutional claim of false arrest without probable cause is cognizable, *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992), but the approval of a warrant by an independent magistrate judge or like official "breaks the causal chain and insulates the initiating party" from liability. *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)(emphasis and internal quotation marks omitted). On the other hand, if the person procuring the warrant makes an intentional and knowing false statement, or acts recklessly in disregard of the truth, the intermediary's deliberations may be tainted. *See, e.g.*, *Deville v. Marcantel*, 567 F.3d 156,170 (5th Cir. 2009); *Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990).

Anderson contends that Chief Martin swore falsely that his employment had terminated, when he should have known Anderson's position that he had not in fact retired or resigned. Like the district judge, we are persuaded there is insufficient evidence to show that Chief Martin deliberately made knowingly false statements or disregarded the truth when he asserted, for purposes of the arrest warrant, that Anderson was no longer employed by the City. There is plainly room to disagree on Anderson's employment status as of September 16; consequently, Chief Martin cannot be responsible for representing one version

of the disputed facts to the magistrate judge. Summary judgment was properly granted on this claim.

### 2. Due Process

Anderson maintains, and the City does not deny, that he had a property right in continued employment as a civil servant in Mississippi. *See* Miss. Code Ann. §§ 21-31-21 and 21-31-23 (1972). He could not be involuntarily terminated without procedural due process protections. *See, e.g.*, *Nichols v. City of Jackson*, 848 F. Supp. 718, 721 (S.D. Miss. 1994). Further, his employment with the City could end in only three ways: by resignation, retirement, or termination.

Each of these characterizations of the events carries somewhat different consequences. If Anderson voluntarily resigned, he would not be entitled to due process protections, though he should have received his accumulated vacation and sick pay and salary until the actual date of separation. Lockley interpreted Anderson's actions of August 27 as an immediate voluntary resignation, however, Anderson apparently never received the accumulated leave pay. If Anderson retired, he would have been entitled to significant state retirement benefits for his long public service career, but no such benefits have been forthcoming. Yet the City asserted to the district court and this court that Anderson "told the city he was retiring" and contended that by his unilateral action he waived any procedural due process rights he may have had. Finally, if Anderson correctly asserts, and a jury finds, that he never really intended to retire, despite his initial impulsive statements, his separation must be viewed as a termination from employment. Termination, as noted, must be accompanied by pre-deprivation notice of the basis for adverse action and an opportunity for the employee to be heard.

The district court held that because Anderson was neither removed nor discharged, he was not entitled to notice or a hearing. Based on this confusing record, we must disagree. There is a genuine, material fact issue whether he

was discharged. Unlike the case relied on by the City, *Cross v. Monett R-I Bd. of Educ.*, 431 F.3d 606 (8th Cir. 2005), Anderson submitted no letter or formal document indicating his intent to retire or resign. City officials interpreted his actions differently among themselves and issued no official declaration concerning his "resignation" until September 23.[1] If the City's actions amount to a discharge, then it is doubtful whether he received sufficient process. The City contends he received "notice" that Chief Martin and Lockley considered him no longer to be an employee, and he had an "opportunity" to challenge his dismissal at the September 22 Board meeting. *Cf. Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1270 (5th Cir. 1992)(notice and an opportunity to respond fulfill public employer's due process duty to a tenured employee). By the time of the September 22 meeting, however, Anderson had been arrested and charged over his attempted return to work. In the absence of formal notice, he may have considered the agenda item concerning his further employment to be superseded. We cannot speculate further on the merits of Anderson's due process claim. After trial on the issue of discharge, the district court may have to reconsider the claim on a complete record, sensitive to the credibility of the witnesses.[2]

---

[1] Anderson claims not to have received a September 4 letter from Chief Martin instructing him to clear out his locker and return Police Department property—the letter was addressed to an incorrect zip code.

[2] The City asserts that even if his termination violated procedural due process, Anderson has not established a predicate for municipal liability, inasmuch as he did not offer proof on summary judgment of a custom or policy that was the moving force of a constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978). On the contrary, as the district court noted, his termination on the existing record may have been produced by Chief Martin, a policymaker, and it was in essence endorsed by the Board's official action in calling the events a "resignation." When the policymakers are the violators, no further proof of municipal policy or custom is required. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986).

No. 12-60401

### 3. Exclusion of Expert Witness

Anderson offered a report and affidavit by Professor Byron D'Andra Orey, Political Science Department Chair at Jackson State University. The district court granted the City's motion to strike the proffered testimony because it amounted to no more than the professor's personal interpretation of the evidence that the jury would hear and the professor's conclusions on the ultimate issues in the case, while it offered no expertise in the matters it covered. The professor's testimony was not based on his undoubted political science expertise but instead on his uncredentialed conclusions about the arrest warrant and Anderson's employment status. He did not have professional expertise concerning police procedure or civil service employment. The court did not abuse its discretion by refusing to admit this as expert testimony pursuant to F.R.E. 702.

### Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED IN PART, REVERSED and REMANDED IN PART**.