**REVISED March 31, 2017**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20217

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2017

Lyle W. Cayce
Clerk

JONATHAN DAVIDSON,

       Plaintiff - Appellant

v.

CITY OF STAFFORD, TEXAS; BONNY KRAHN, Chief of Police, City of Stafford, Texas; HENRY GARCIA, Police Officer, City of Stafford, Texas; STEVEN FLAGG, Police Officer, City of Stafford, Texas; DAN JONES, Police Officer, City of Stafford, Texas,

       Defendants - Appellees

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before KING, OWEN, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Plaintiff Jonathan Davidson was arrested during a protest of a Planned Parenthood in Stafford, Texas. Davidson subsequently brought suit under 42 U.S.C. § 1983 for violations of his rights under the First and Fourth Amendments against Defendants Officer Steven Flagg, Officer Dan R. Jones III, Chief of Police Bonny Krahn, and the City of Stafford. The district court held that the individual officers were entitled to qualified immunity and that

Davidson failed to create a dispute of fact for municipal liability for the City of Stafford.  Davidson appeals.  For the reasons discussed below, we AFFIRM IN PART, REVERSE IN PART, and REMAND.

## I. Factual and Procedural Background

On March 31, 2013, Davidson arrived at the Planned Parenthood clinic (the "Clinic") in Stafford, Texas to protest and express his pro-life views.  The Clinic is part of a commercial strip center located along the southbound feeder of U.S. 59.  During his protest, Davidson stood in a green space between the parking lot of the commercial strip center and U.S. 59.  The green space was bounded by the parking lot, U.S. 59, and at least one entryway from U.S. 59 to the parking lot.[1]

Davidson's protest consisted of standing in the green space, holding a sign that said "Pray to End Abortion," and waving at cars both on U.S. 59 and in the parking lot.  If a car stopped, Davidson would speak to the passengers and offer them a card with a phone number to a service that offers free pregnancy tests and ultrasounds.[2]

During his protest, Davidson was approached by a Clinic employee, Marilyn Chosed.  Although the parties disagree on what exactly happened, both agree that Chosed informed Davidson that he had to leave.  This exchange prompted Chosed to contact the Stafford Police Department ("Stafford PD").  During her phone call to Stafford PD, Chosed stated that "we have a protester out here and he keeps coming off of the area that he's supposed to and flagging down our patients before they come in the clinic."  Chosed also provided the

---

[1] Evidence in the record demonstrates that, while Davidson occasionally crossed the entryway to stand on another green space, he remained on one green space during the interaction that led to his arrest.

[2] During his deposition, Davidson clarified that he protested with the intent to persuade women not to go into the Clinic because he "[doesn't] want abortions to happen."

operator with a physical description of Davidson. The operator subsequently put out a dispatch stating that there was a "suspicious person call at Planned Parenthood." The operator then said "There's a white male . . . who is flagging down customers before they come in."

Officer Steven Flagg of the Stafford PD was dispatched to the Clinic following the dispatch call. Upon arrival, he observed Davidson standing in the green space outside the parking lot. Officer Flagg proceeded to enter the Clinic and speak with Chosed, who informed Officer Flagg that Davidson had been walking in front of the Clinic and in the parking lot, approaching patients on the sidewalk and in the parking lot, and delaying or inconveniencing patients as they attempted to enter the Clinic. Chosed also informed Officer Flagg that she had warned Davidson that he was both trespassing on Clinic property and harassing Clinic patients, and that he needed to leave. Based on his conversation with Chosed, Officer Flagg believed that Davidson was walking in the parking lot and following patients to the entryway of the Clinic. Officer Flagg clarified that Chosed did not inform him where exactly Davidson had been walking. Officer Flagg also testified that Chosed did not state anything about Davidson stopping vehicles, and that, based on Chosed's description, he did not believe Davidson was delaying vehicles.

A second officer, Dan R. Jones III, was dispatched as a backup unit to Officer Flagg and arrived shortly after Officer Flagg arrived. Together, the officers approached Davidson and asked him to come to them in the parking lot. Davidson responded that he could not, but the officers again asked Davidson to approach them. At this stage, the parties' facts diverge. On the one hand, Davidson claims that the officers began accusing him of harassing Clinic customers, to which Davidson responded that he was there to pray, hold his sign, and hand out cards. Davidson also claims to have informed the officers that he had no way of knowing which people entering the parking lot

were Clinic customers. On the other hand, Officers Flagg and Jones each claim that Officer Flagg asked Davidson whether he was approaching patients or stopping vehicles, to which Davidson responded in the affirmative.[3] The officers also claim that Officer Flagg asked Davidson where he was approaching patients, but Davidson did not provide a direct response. Finally, Davidson's police report indicates that Officer Flagg asked Davidson whether he was on business property, to which Davidson stated that he knew what he was and was not allowed to do.

At this point, Davidson backed away from the officers and acted as if he was going to continue protesting. Officer Flagg asked Davidson to come back and continue speaking to both officers. Officer Flagg also asked Davidson for identification. Davidson said he did not have any identification and that his name was "Jonathan." Officer Flagg repeatedly asked Davidson for identification or his last name, to which Davidson responded with either "Jonathan" or "Jon." Based on these responses, Officers Flagg and Jones arrested Davidson. As they arrested Davidson, the officers stated "you don't ID, you go to jail" and "you fail to ID, you got to jail." Upon a request from Davidson to know why he was being arrested, one of the officers stated "fail to ID, when we're conducting an investigation, did not identify yourself to the police." Davidson again informed the officers that his name was Jonathan and that he was not operating a motor vehicle, but an officer stated "when we're conducting an investigation, fail to give your name to the police, you go to jail."

Davidson was charged with failure to identify under Texas Penal Code § 38.02 and taken to Fort Bend County Jail. He was released later that night.

---

[3] There appears to be some dispute over whether the officers thought Davidson was stopping cars during his protest. Officer Jones's affidavit also states his belief that Davidson was approaching cars.

Approximately a year later, Davidson's attorney sent a letter to the City of Stafford ("the City") to confirm that Davidson would not be subject to any present or future prosecution. The City responded that it would not prosecute Davidson for his previous conduct but did not state whether it would prosecute Davidson for similar conduct in the future. Davidson testified that he intends to protest the Clinic in the future but had not returned because he does not want to end up back in jail.

Davidson subsequently filed suit, alleging claims under 42 U.S.C. § 1983 for violations of his rights to both freedom of speech under the First Amendment and freedom from unreasonable searches and seizures under the Fourth Amendment. Davidson also asserted an as-applied challenge to Texas Penal Code §§ 38.02 and 42.03. Davidson named Officers Flagg and Jones, Chief of Police Bonny Krahn, and the City as defendants. Davidson's complaint sought damages, including punitive damages, as well as a declaration that Defendants' actions, policies, and practices violated the Constitution.

Following an answer by the Defendants and discovery, Defendants filed motions for summary judgment. The district court ultimately granted summary judgment in favor of the Defendants on all claims. The district court held that (1) Officer Flagg, Officer Jones, and Chief Krahn were entitled to qualified immunity and (2) the City was entitled to summary judgment because Davidson failed to demonstrate any policy that caused Davidson's alleged constitutional violation.

## II. Jurisdiction and Standard of Review

The district court had subject matter jurisdiction over Davidson's claim under 28 U.S.C. § 1331, and this court has jurisdiction to review the final judgment under 28 U.S.C. § 1291.

An appeal from a grant of summary judgment is reviewed de novo. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016) (quoting *Moss*, 610 F.3d at 922), *cert denied*, 137 S. Ct. 815 (2017).

## III. Discussion

Davidson's appeal both challenges the district court's grant of summary judgment on his § 1983 claims and argues that the district court failed to address his claims that the City's actions chilled his speech. We address each of these arguments in turn.

### A. Section 1983

Davidson seeks to reverse the district court's grant of summary judgment as to all three groups of Defendants: Officers Flagg and Jones, the City, and Chief Krahn. We agree with Davidson that reversal is appropriate as to Officers Flagg and Jones, but hold that the district court correctly granted summary judgment to the City and Chief Krahn.

#### 1. Officers Flagg and Jones

The district court held that Officers Flagg and Jones were entitled to qualified immunity on Davidson's claims of violations of both his First Amendment right to free speech and his Fourth Amendment right to be free from unlawful searches and seizures. The district court initially found that

Officers Flagg and Jones did not have actual probable cause to arrest Davidson for failure to identify. Nevertheless, the district court determined that the officers were entitled to summary judgment because (1) Davidson had been ordered to move under Texas Penal Code § 42.04 and (2) Flagg and Jones "at least arguably had probable cause because [they] reasonably believed that Davidson made passage through the parking lot and into [the Clinic] unreasonably inconvenient by harassing [the Clinic's] patients and stopping vehicles as they entered and exited the parking lot." This latter conduct, according to the district court, constituted obstruction of a highway or other passage under Texas Penal Code § 42.03.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *al-Kidd*, 563 U.S. at 743).

A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment. *See Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013). Individuals who protest are also protected under the First Amendment from retaliatory actions by government officials. *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). But if an officer has probable cause to seize that individual, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Id.* at 245 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261–62 (5th Cir. 2002)). Probable cause "means facts and circumstances within the officer's knowledge that are

sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Hogan*, 722 F.3d at 731 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Officers are therefore entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest. *See Crostley v. Lamar Cty.*, 717 F.3d 410, 422–23 (5th Cir. 2013); *see also Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 199 (5th Cir. 2015) ("[O]fficers are entitled to qualified immunity unless there was not probable cause for the arrest and a reasonable officer in their position could not have concluded that there was probable cause for the arrest." (citing *Crostley*, 717 F.3d at 422–23)). This probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

The district court held that Officers Flagg and Jones had "arguable" probable cause to arrest Davidson for obstructing a highway or other passage in violation of Texas Penal Code § 42.03. In relevant part, § 42.03 states:

> (a) a person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:
>
>> (1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others;
>>
>> . . . .

(b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

TEX. PENAL CODE § 42.03.[4]

We agree with the district court that there was no actual probable cause for Davidson's arrest. At the time Officers Flagg and Jones arrested Davidson, the only crime charged to Davidson was failure to identify under § 38.02. This is further confirmed in Davidson's police report, which charged Davidson with failure to identify under § 38.02(a). But § 38.02(a) applies only when an officer "has lawfully arrested the person and requested the information." TEX. PENAL CODE § 38.02(a). At the time they performed the arrest for the alleged § 38.02 violation, Davidson was not under arrest for any other violation, thus, the "failure to identify" statute clearly was not triggered. We therefore conclude that the district court correctly determined that the officers had no actual or "arguable" probable cause for arresting Davidson under § 38.02. We consider whether they had probable cause under any other statute below.

Turning to objective or "arguable" probable cause, and taking the facts in the light most favorable to Davidson, it is clear that the officers were objectively unreasonable in believing that there was probable cause for Davidson's arrest under the only other section posited here, § 42.03. Based on the information available to Officers Flagg and Jones, Davidson had not "render[ed] impassable or . . . render[ed] passage unreasonably inconvenient

---

[4] If the conduct regulated under § 42.03(a) consists of "speech or other communication" or "a gathering . . . to otherwise express . . . a position on social, . . . political, or religious questions," Texas Penal Code § 42.04 requires that "the actor must be ordered to move, disperse, or otherwise remedy the violation [under § 42.03] prior to his arrest if he had not yet intentionally harmed the interest of others which those sections seek to protect." TEX. PENAL CODE § 42.04(a). Given our determination that the officers had no probable cause to arrest Davidson under § 42.03, § 42.04 becomes inapplicable to Davidson's conduct, as that statute requires "conduct that would otherwise violate section . . . 42.03 (Obstructing Passageway)" and Davidson's conduct did not violate the statute. *Id.*

or hazardous" for Clinic patients. TEX. PENAL CODE § 42.03. At the time Officer Flagg arrived at the Clinic, Davidson was standing in the grass easement next to the parking lot. Officer Flagg proceeded to speak with Chosed, who informed him that Davidson had been both (1) walking both in front of and in the parking lot of the Clinic and (2) approaching, delaying, and/or inconveniencing patients as they attempted to enter the Clinic. Officer Flagg later testified in his deposition that he took Chosed's description of Davidson's behavior to mean that Davidson was not impeding vehicle traffic. Officers Flagg and Jones could infer from Chosed's statements that Davidson had slowed down people entering both the parking lot and the Clinic in order to speak with them and offer them informational cards. But while these actions could be considered inconvenient based on Chosed's description, they cannot be construed, by an objectively reasonable officer in Officers Flagg's or Jones's position, as rendering entry to the Clinic impassable or unreasonably inconvenient as required under § 42.03.

A review of Texas state court decisions applying § 42.03 further supports our holding that no reasonable officer would conclude that probable cause existed to arrest Davidson. The description of Davidson's actions provided to Officer Flagg included two key facts that the Texas Court of Criminal Appeals has previously seized upon in determining whether conduct rises to the level of obstruction under § 42.03. *See Haye v. State*, 634 S.W.2d 313, 314–15 (Tex. Crim. App. [Panel Op.] 1982). First, Chosed stated that Davidson was walking, approaching, harassing, and delaying Clinic patients, but not stopping or preventing their entry into the Clinic. This distinction of movement by the defendant, as opposed to the defendant standing in place or making a pathway impassable, requires a finding of no obstruction. *Compare Sherman v. State*, 626 S.W.2d 520, 528 (Tex. Crim. App. 1981) (no obstruction where a defendant caused a momentary stop by walking in front of a car)*, with Haye*, 634 S.W.2d

10

at 314–15 (obstruction where a defendant stood on the sidewalk and forced an individual to walk around him and through mud). Second, any delay caused by Davidson was based on Davidson's abortion protest. Reasonable officers in Officers Flagg's and Jones's position must therefore consider the balance between Davidson's First Amendment rights and the right of the public to have access to the Clinic. *See Sherman*, 626 S.W.2d at 526 ("By requiring [under § 42.03] that passage be severely restricted or completely blocked . . . we give ample breathing room for the exercise of First Amendment rights. At the same time, such a definition adequately protects the right of the public to have access to the . . . premises."). Given that the information available to Officers Flagg and Jones at the time of Davidson's arrest indicated that (1) Davidson had delayed (by his words, not physically), but not prevented anyone from entering the Clinic and (2) Davidson was exercising his First Amendment rights by protesting, it was objectively unreasonable for these officers to conclude that there was probable cause to arrest Davidson under § 42.03.

In addition to cases establishing the lack of probable cause, there was fulsome case law clearly establishing that an arrest without probable cause violates both First and Fourth Amendment rights at the time of Davidson's arrest in 2013. Specifically, Officers Flagg's and Jones's conduct violated Davidson's clearly established rights as demonstrated in federal case law. *See Club Retro*, 568 F.3d at 206 ("The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [the] arrests [in 2006]."); *Keenan*, 290 F.3d at 262 ("If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of [the officers] against the plaintiffs, then their retaliation violated clearly established law of this circuit." (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)). Their actions also violated Davidson's rights as recognized by the highest state courts in Texas. *See Faust*

11

*v. State*, 491 S.W.3d 733, 745 (Tex. Crim. App. 2016) ("There is no dispute that [the protestors] had a First Amendment right to express their views in a public forum."), *cert. denied*, 85 U.S.L.W. 3324 (U.S. Jan. 9, 2017); *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 205 (Tex. 1981) ("The rights to picket and demonstrate in public places, particularly streets, sidewalks, and parks, are extended [F]irst [A]mendment protection." (citations omitted)); *see also Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 567–68 (Tex. 1998) (limiting injunction against protestors who threatened to block clinic entrances to only that necessary to allow ingress and egress while protecting the right of the protestors to be heard). These federal and state decisions make clear that Davidson's arrest without probable cause was a violation of his First and Fourth Amendment rights.

On the second prong of the qualified immunity defense, recent Supreme Court decisions addressing claims for excessive force have "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, No. 16–67, Slip Op. at 6 (U.S. Jan. 9, 2017) (per curiam) (quoting *al-Kidd*, 563 U.S. at 742)); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Our cases outside the excessive force area involving warrantless arrests and limits on speech have not specifically mentioned this aspect of Supreme Court cases. *See, e.g., Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009); *Evett v. DETNTFF*, 330 F.3d 681, 687 (5th Cir. 2003). Assuming *arguendo* that the specific *White/Mullenix* admonition applies to all qualified immunity cases regardless of the constitutional violation charged, the officers here still come up short. The cases cited above clearly demonstrate what does and does not violate § 42.03 and also clearly establish the unconstitutionality of warrantless arrests without probable cause.

Even if he had not been exercising core First Amendment rights, Davidson was not (even arguably) in violation of § 42.03 when he stood outside of the Clinic. Additionally, his right to protest prohibited the officers' application of § 42.03 in the manner employed here. Resolving all factual disputes in favor of Davidson, the objective unreasonableness displayed by Officers Flagg and Jones in the face of law clearly establishing Davidson's rights leads us to the conclusion that qualified immunity cannot shield their actions against Davidson. We conclude that in Davidson's case, "every reasonable official would have understood that what he is doing violates" Davidson's rights. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quoting *al-Kidd*, 563 U.S. at 741). The district court improperly granted summary judgment in favor of Officers Flagg and Jones.

## 2. The City of Stafford

Davidson next argues that there are three bases from which we may find that the City had an official policy of improperly applying § 38.02: (1) Chief Krahn's testimony concerning his interpretation of § 38.02, (2) evidence that Chief Krahn ratified the conduct of Officers Flagg and Jones, and (3) evidence concerning an alleged pattern of misapplication of § 38.02 by the Stafford PD. We find none of Davidson's arguments persuasive, and therefore affirm the district court's grant of summary judgment in favor of the City.

Municipalities are persons susceptible to suit under § 1983, but they cannot be found liable on a theory of vicarious liability or respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). At the summary judgment stage, a plaintiff making a direct claim of municipal liability must demonstrate a dispute of fact as to three elements: that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015).

13

Each of Davidson's arguments before us goes to the first element, an official policy on the part of the City. Davidson's first argument relies on Chief Krahn's deposition testimony that an officer performs a legal arrest under § 38.02 if an officer has probable cause to believe that the person has committed some other crime at the time they fail to identify. In "rare circumstances," a single unconstitutional action may be sufficient to impose municipal liability "if undertaken by the municipal official or entity possessing 'final policymaking authority' for the action in question." *Howell*, 827 F.3d at 527 (citation omitted). An unconstitutional policy may be found when a policymaker performs the specific act that forms the basis of the § 1983 claim. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482, 484–85 (1986); *Howell*, 827 F.3d at 528; *Anderson v. City of McComb*, 539 F. App'x 385, 388 n.2 (5th Cir. 2013). But even if we assume *arguendo* that Chief Krahn was a policymaker for the City, his testimony alone is insufficient to demonstrate an official policy for the City because testimony is not a specific act by a policymaker that results in a constitutional violation susceptible to a § 1983 claim. Unlike the situations in *Pembaur*, *Howell*, and *Anderson*, Davidson has presented no evidence that Chief Krahn performed the arrest that forms the basis of Davidson's § 1983 claim. Without this evidence, Davidson fails to demonstrate that Chief Krahn's testimony constitutes the type of "rare circumstance" in which this court may find that the City had a policy of unconstitutionally interpreting § 38.02.

Davidson's second argument also relies on deposition testimony from Chief Krahn. Davidson argues that Chief Krahn ratified the conduct of Officers Flagg and Jones when he reviewed Davidson's arrest and determined that there was no violation from which he could discipline the officers. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their

decision is final." *Peterson v. City of Fort Worth*, 588 F.3d 838, 854 (5th Cir. 2009) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Ratification, however, is limited to "extreme factual situations." *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting *Peterson*, 588 F.3d at 848). "[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848 (citation omitted). Further, good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). Here, the underlying conduct by Officers Flagg and Jones, while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).[5] Chief Krahn's conduct is more analogous to the conduct in *Zarnow*, where we did not find ratification when a municipality defended the constitutionality and propriety of its officers' actions, despite our later determination that the officers' actions violated the Fourth Amendment. *Zarnow*, 614 F.3d at 169;

---

[5] The facts of *Grandstaff* were described in a subsequent opinion as follows:

> [I]n response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability."

*Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (citations omitted).

see *also Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (no ratification where the sheriff accepted an officer's use of force report, refused to turn over evidence until a lawsuit was filed, and defended the deputies' actions in the case). Chief Krahn's actions in investigating Officers Flagg's and Jones's conduct thus cannot support an allegation of ratification resulting in an official policy on the part of the City.

Davidson's final argument attempts to impute a policy of unconstitutionally enforcing § 38.02 to the City by relying on seven incidents between January 2010 and June 2013 in which Stafford PD arrested individuals due to, among other things, a violation of § 38.02. In order to find a municipality liable for a policy based on a pattern, that pattern "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*, 588 F.3d at 850 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). A pattern requires similarity, specificity, and sufficiently numerous prior incidents. *Id.* at 851. But Davidson's evidence of an alleged pattern lacks the detail necessary to find a policy on the part of the City. As an initial matter, Davidson provides no evidence that any of the previous arrests resulted in subsequent litigation alleging a constitutional violation. Looking to these prior arrests, most appear to involve facts demonstrating that the arrestees had committed or were in the act of committing another crime, in addition to their failure to identify. Under this court's precedent, these arrests likely did not involve a constitutional violation, as the officers likely had probable cause to arrest these defendants for the other crime. *Club Retro*, 568 F.3d at 204.[6] If

---

[6] That we would have to consider whether each prior incident constitutes an unconstitutional arrest further cuts against a finding of a pattern. *See Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("The weakness in the approach is apparent in its

we remove these cases from our consideration, Davidson's pattern relies on three cases (two from the records obtained by Davidson and Davidson's case) over three-and-a-half years to form the basis of the alleged pattern of constitutional violations. Without further context of the size of Stafford PD or the amount of arrests made over the corresponding period, these incidents are insufficient to establish a pattern of constitutional violations by the Stafford PD. *See, e.g.*, *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (no pattern: two reports of violations of a policy in four years in Houston); *Peterson*, 588 F.3d at 851 & n.4 (no pattern: twenty-seven complaints of excessive force over four years in Fort Worth); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (no pattern: eleven incidents of warrantless searches in Houston). Because Davidson's arguments on an official policy on the part of the City and ratification based on Chief Krahn's conduct also fail, we affirm the district court's grant of summary judgment in favor of the City on Davidson's § 1983 municipality liability claim.

### 3. Chief Krahn

Davidson's final argument concerns the liability of Chief Krahn in his individual capacity. According to Davidson, Chief Krahn's endorsement of an unconstitutional interpretation of § 38.02 caused a pattern of constitutional violations, and Davidson's arrest was the obvious consequence of Krahn's misinterpretation of the statute. In order to survive summary judgment against a § 1983 claim for supervisory liability, a plaintiff is required to create a dispute of fact that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train

---

practical effects. It requires the City to defend 'cases within cases' from historical records to justify searches conducted without a warrant.").

or supervise amounts to deliberate indifference. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–53 (5th Cir. 1994) (en banc) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986), *abrogated in part by Johnson v. Morel*, 876 F.3d 477, 480 (5th Cir. 1989)).

Davidson's allegations and evidence fail to demonstrate a material dispute of fact as to deliberate indifference. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997) (alteration omitted)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Id.* (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). Deliberate indifference can be demonstrated in two ways. *Kitchen v. Dallas Cty.*, 759 F.3d 468, 484 (5th Cir. 2014)*, abrogated in part by Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473–76 (2015). First, a plaintiff may demonstrate "that a municipality had notice of a pattern of similar violations." *Id.* (alteration omitted) (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)). Second, a plaintiff may demonstrate liability based on a single incident if the constitutional violation was "'the highly predictable' consequence of a particular failure to train." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) and *Connick v. Thompson*, 563 U.S. 61, 63–68 (2011)). If we find that Davidson cannot establish a dispute of fact as to deliberate indifference, we need not address the other two prongs of supervisory liability. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

As a threshold matter, the proper inquiry for supervisory liability here would be Chief Krahn's alleged failure to train or supervise, not his

interpretation of § 38.02. But even if Chief Krahn's interpretation of § 38.02 was the equivalent of a failure to train or supervise, Davidson has failed to demonstrate a material dispute of fact concerning the deliberate indifference of Chief Krahn. Davidson's evidence is insufficient to demonstrate either a pattern, as discussed in section III.A.2, *supra*, or that his injury was a highly predictable consequence of Chief Krahn's understanding of § 38.02. That is, Chief Krahn's understanding of § 38.02 does not lead to the highly predictable consequence of officers arresting individuals (including Davidson) without probable cause. On this point, our prior decision in *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000) is instructive. There, we found deliberate indifference where the municipality in question had not trained or supervised the officer who committed the allegedly unconstitutional conduct. *Id.* at 462. We further emphasized the fact that the policymaker, a sheriff, had recently investigated the officer and was aware of the officer's "youth, inexperience, personal background, and ongoing [improper] arrest activities." *Id.* at 458, 462. None of the facts in Davidson's case provide the same cause for concern we recognized in *Bryan County*. Defendants provided evidence demonstrating the extensive training completed by Officers Flagg and Jones, and Davidson points to no evidence concerning the officers' backgrounds or activities with the Stafford PD that demonstrate the high probability of Davidson's arrest. Davidson's evidence therefore fails to create a material dispute of fact as to deliberate indifference, and the district court correctly granted summary judgment on his claim for the liability of Chief Krahn in his individual capacity.

In conclusion, we agree with the district court that Davidson's claims against the City and Chief Krahn cannot survive summary judgment. But we hold that Officers Flagg and Jones are not entitled to qualified immunity, as they had no actual probable cause and were objectively unreasonable to believe they had probable cause to arrest Davidson.

B. First Amendment As-Applied Claim

Davidson also argues that the district court failed to address his claims that Defendants' understanding of sections 38.02 and 42.03 and Davidson's arrest resulted in an as-applied violation of Davidson's First Amendment rights. We agree. The district court appears to have addressed only Davidson's First Amendment claim in the context of § 1983 retaliation, where the district court granted Defendants summary judgment due to its determination that Officers Flagg and Jones had "arguable" probable cause. But Davidson provided undisputed evidence and argued in his filings before the district court that he intends to continue protesting the Clinic and that Defendants intend to continue enforcing sections 38.02 and 42.03 in an unconstitutional manner.[7] This evidence is sufficient to demonstrate standing for a First Amendment challenge. *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014). Regardless of the outcome of Davidson's other § 1983 claims, Davidson has stated a valid claim that sections 38.02 and 42.03, as applied to his conduct, violate his First Amendment rights. On remand, the district court shall consider this claim and, if necessary, fashion a remedy in the form of a declaration specific to Davidson and his protesting at the Clinic. *Cf. McCullen v. Coakley*, 134 S. Ct. 2518, 2541 (2014) (invalidating overly broad Massachusetts buffer zone statute regarding healthcare facilities where abortions are performed). This declaration must clearly define what is and is not allowed by both Davidson, the City, and its officers under sections 38.02 and 42.03 in light of this opinion.

## IV. Conclusion

Except as provided in Section III.B. above, we AFFIRM the district court's grant of summary judgment to the City and Chief Krahn on Davidson's

---

[7] Defendants' intent to unconstitutionally enforce sections 38.02 and 42.03 was further demonstrated during oral argument through defense counsel's erroneous interpretation of the statutes.

§ 1983 claims. We REVERSE the district court's grant of summary judgment to Officers Flagg and Jones, and REMAND these § 1983 claims to the district court. On remand, the district court shall also consider Davidson's First Amendment claim and, fashion a declaration, in accordance with this opinion, delineating both Davidson's right to protest the Clinic and the scope of Defendants' authorization under sections 38.02 and 42.03.