# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-11177

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2019

Lyle W. Cayce
Clerk

CORRY DEFRATES,

      Plaintiff - Appellant

v.

DAVID PODANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-1290

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge: * 1

David Podany arrested Corry Defrates at a school function. Defrates alleges that both the arrest and the force used to bring it about violated his Fourth Amendment rights. The question presented is whether Podany is entitled to qualified immunity on these claims. The district court answered yes. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1 Catharina Haynes, Circuit Judge, concurring in the judgment only.

No. 18-11177

I.

On May 16, 2015, Podany, an off-duty police officer, arrested Defrates for criminal trespass and resisting arrest at an off-campus school event put on by Village Tech Schools. But there is more to this story than just the events of that day.

About a year earlier, Robert Johansen, Assistant Superintendent for Village Tech Schools, contacted Corporal Brakenridge regarding concerns about Defrates. Johansen stated that Defrates—who at the time was going through a divorce and a custody battle over his son (a student at Village Tech)—had made concerning statements at the school, which raised concerns that he could be mentally troubled and could pose a safety risk to the staff and students. Johansen also directed Brakenridge to Defrates's Facebook page, which had a post about PTSD and another one saying, "Death is better than Divorce." In response to Johansen's concerns, Brakenridge called Defrates's wife. She confirmed the custody battle and stated that Defrates had served in the Special Forces in the Army. Brakenridge put this information in a report and disseminated it through the department. Podany knew of the information in the report when he confronted Defrates in 2016.

Defrates's troublesome conduct eventually led Johansen to issue a criminal-trespass warning to him in August 2014. The warning stated that it was issued because of Defrates's continued, aggressive conduct related to having unsupervised access to his son while at school. In response to Defrates and around the same time, Johansen requested that the Cedar Hill Police Department provide school staff with active-shooter training. Then, in January 2015, Johansen summoned a police officer to the school campus to issue a second, verbal criminal-trespass warning to Defrates. Again, Podany knew of all the above events.

2

No. 18-11177

With this background information in hand, we fast-forward to May 16, 2015. On that day, Defrates arrived at an off-campus event with his son. He checked in at the sign-in table. Johansen was standing nearby. Defrates then went to the room where his son was to give a presentation. He watched the presentation, but then he got up, left the room, and began to wander the halls. This is when Johansen first confronted him. Johansen told Defrates that he needed to either go back to the room where his son was or leave. Defrates said that he did not need to listen to Johansen and that he was not doing anything wrong. Johansen then went to find Podany. He explained to Podany that Defrates was violating the criminal-trespass warning and refusing to leave. He asked Podany to help force Defrates to leave. Podany then contacted his dispatch and requested that an on-duty officer be sent to arrest Defrates.

After he called dispatch, Elizabeth Podany, David Podany's wife and another school administrator, asked to speak with Defrates in a small clear-glassed office. Exactly what was said in that exchange is in dispute. According to Elizabeth, she told Defrates not to do this to his son and to please leave. Defrates responded to Elizabeth by calling her the "evil in this world" and by saying, "I'm going to go talk to all of your little kids and there is nothing you can do about it." He then excused himself, saying he needed to get a drink of water. According to David Podany—who overheard the end of the conversation—Defrates said that "[y]ou're going to have to arrest me, I'm not leaving. I'm going to get a drink of water and I'm coming back in." Defrates's version paints a different story. He claims that he calmly explained that he was going to watch his son's presentation and would be leaving as soon as it ended. He maintained that he had done nothing wrong and needed to get a drink of water. He then walked away from Elizabeth and toward the adjacent hallway.

3

No. 18-11177

Podany was waiting for him when he left the office. Defrates immediately identified Podany as a "cop." They walked into the hallway and Podany repeatedly told him to keep walking down the hall to talk. Defrates dismissed these verbal commands, insisting instead that he needed a drink of water and was doing nothing wrong.

At this point, Podany grabbed Defrates's arm and turned him around to face the wall. Defrates pushed back off the wall. Podany then spun Defrates against the other wall and attempted again to wrangle Defrates's arms behind his back. But Defrates resisted Podany's efforts, while simultaneously saying that he did not do anything wrong and was just trying to get a drink of water. Podany next used a "takedown" maneuver to wrestle Defrates to the ground, and as Defrates was attempting to get back up, Podany kneed him in the neck/head area to keep him down. Finally, with the assistance of others, Podany gained control over Defrates by placing his weight on Defrates's upper back/neck and putting him in a wrist lock. Soon thereafter, an on-duty officer arrived, placed Defrates in handcuffs, and walked him out of the building. Defrates claims that Podany caused him severe brain trauma.

Defrates filed this lawsuit under 42 U.S.C. § 1983, bringing false-arrest and excessive-force claims against Podany. Podany moved for summary judgment on qualified-immunity grounds. The district court held that Podany was entitled to qualified immunity on both claims. It reasoned that (1) Podany had probable cause to arrest Defrates for criminal trespass and resisting arrest and (2) Podany's use and level of force was reasonable under the circumstances. Defrates appeals.

## II.

## A.

This court reviews a grant of summary judgment de novo. *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016). Summary judgment is proper when

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* at 311–12. This court must view all the "facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2011) (per curiam).

## B.

However, an assertion of qualified immunity alters this familiar standard. Once the defense is asserted, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) (quotation omitted). Nonetheless, all inferences are still viewed in the light most favorable to the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, courts engage in a two-step analysis. "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged. Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Griggs*, 841 F.3d at 312–13 (citation omitted).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quotation omitted). The right cannot be defined at a high level of generality; the plaintiff must produce cases where officers were held to have violated another's right

No. 18-11177

"under similar circumstances." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). While there does not need to be a case directly on point, "existing precedent must have placed the . . . constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quotation omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted).

## III.

Defrates argues that Podany should not be allowed to hide behind qualified immunity's protective shield. On Defrates's account, Podany violated his clearly established Fourth Amendment rights to be free from false arrests and excessive force. We first address the false-arrest claim, then the excessive-force claim.

## A.

The Fourth Amendment protects citizens from false arrests—that is, arrests unsupported by probable cause. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). Nonetheless, qualified immunity grants police officers some wiggle room for mistakes when it comes to probable cause. Plaintiffs must not only show that there was no probable cause but also that the "officers were objectively unreasonable in believing there was probable cause for the arrest." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017). Put differently, qualified immunity protects officers so long as they had "arguable (that is, reasonable but mistaken) probable cause for the arrests." *Club Retro*, 568 F.3d at 207.

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of the arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (quotation omitted). The probable cause can be for any crime, not just

6

the one the officer subjectively considered at the time. *Davidson*, 848 F.3d at 392.

The district court found that Podany reasonably believed that he had probable cause to arrest Defrates for two crimes: criminal trespass and resisting arrest.[2] Because we agree with the district court that Podany had arguable probable cause to arrest Defrates for criminal trespass, we need not delve into whether he also had probable cause to arrest Defrates for resisting arrest.

Texas law makes it illegal for any person to enter or remain on the property of another "without effective consent" when that person "had notice that the entry was forbidden" or "received notice to depart but failed to do so." TEX. PENAL CODE ANN. § 30.05(a). These elements are met. The record shows that: (1) Podany knew that Village Tech Schools had issued a criminal-trespass warning to Defrates; (2) Johansen told Podany that he had asked Defrates to leave and Defrates had refused to do so; and (3) Podany heard Defrates tell Elizabeth Podany that he was going to get a drink of water and did not do anything wrong.[3] These facts gave Podany at least an arguable basis to believe that he had probable cause to arrest Defrates for criminal trespass: Podany was told that Defrates was on the property after receiving notice to depart but

---

[2] It is undisputed that Podany was off-duty and not in uniform when he arrested Defrates. Nonetheless, in Texas, "a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity." *Laughlin v. Olszewski*, 102 F.3d 190, 192 n.1 (5th Cir. 1996); *see also Legrand v. Gillman*, 576 F. App'x 334, 335 n.1 (5th Cir. 2014) (per curiam) ("Although Gillman was off-duty at the time of the altercation, he is nonetheless entitled to qualified immunity as a public official."); *Davidson v. AT&T Mobility, LLC*, 2019 WL 486170, at *9–10 (N.D. Tex. Feb. 7, 2019) (Fitzwater, J.) (discussing this point in detail).

[3] This is what Defrates claims he said at the end of his conversation with Elizabeth Podany, so at this juncture, we must assume that this is what Podany overheard Defrates say—even though Podany claims Defrates said that they would have to arrest him because he was not leaving and intended to come back.

failing to do so. Thus, the district court correctly granted Podany qualified immunity on this basis.

Defrates's rebuttal is largely to argue that some facts suggest school administrators had initially allowed him to attend the school event. He cites to no evidence, however, that Podany knew of these facts at the time of the arrest, which is the relevant issue. *See Flores*, 381 F.3d at 402. And even if he had cited evidence, the fact that Defrates may have had permission to initially attend the event does not create a dispute of material fact over whether he later exceeded the scope of his permission and was asked to leave by Johansen.

Defrates also points out that Podany admitted to not personally observing Johansen ask Defrates to leave. But personal observation is not a necessary predicate for finding that an officer had arguable probable cause to arrest for a criminal trespass. Relying on third-party information can be reasonable. *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999) (explaining that, under the "collective knowledge" doctrine, officers are not required to have personal knowledge where they have reasonably relied on information provided by another); *see also Skinner v. Gragg*, 650 F. App'x 214, 217 (5th Cir. 2016) (per curiam) (finding that a Texas officer was entitled to qualified immunity when all he knew was that the defendant had been asked to leave, did not do so, and was still on the scene when the officer arrived). Thus, Podany was entitled to rely on—and had no reason to doubt—Johansen's oral assurance that he had asked Defrates to leave. We hold that Defrates's seizure was supported by probable cause and did not violate his Fourth Amendment right against false arrest.

## B.

To succeed on an excessive-force claim, the plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."

No. 18-11177

*Deville*, 567 F.3d at 167 (quotation omitted). The parties dispute only the latter two elements, which this court has recognized are intertwined and often considered together. *See Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018).

To determine whether the force was objectively unreasonable, this court must carefully evaluate the individual facts in each case and consider the totality of the circumstances. *Deville*, 567 F.3d at 167. Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Graham v. Conner*, 490 U.S. 386, 396 (1989). The temporal focus is on how the officer perceived the scene as it unfolded, not with 20/20 hindsight. *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013).

Defrates alleges that Podany used excessive force when he slammed Defrates into the wall, utilized a takedown, used a knee strike, placed Drefates into a wrist hold, and placed pressure on Defrates's head. Whether an officer's actions amount to excessive force "depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quotation omitted). In other words, "[t]he correct inquiry . . . [is] whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [he] confronted." *Mullenix*, 136 S. Ct. at 309 (quotation omitted).  And to determine whether the prohibition was clearly established, we ask whether "existing precedent place[s] the conclusion that [the officer] acted unreasonably in these circumstances beyond debate." *Id.* (quotation omitted). With this proper framework in mind, we turn to the four cases Defrates fired off at oral argument—four cases that he claimed place the unconstitutionality of Podany's actions beyond debate.

9

No. 18-11177

First, we address *Deville v. Marcantel*. There, a 45-year-old woman did no more than refuse to leave her grandchild alone in the car. 567 F.3d at 168. The officer's response: He bashed in the car window and ripped the woman out. *Id.* The court held that this easily crossed into excessive-force land. *Id.* at 169. This court has since said that *Deville* stands for the general proposition that an officer cannot, in the face of minimal to no resistance, immediately resort to overwhelming force when stopping a suspect for a minor traffic violation. *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Deville*, among other cases, as clearly establishing that an officer cannot "abruptly resort[] to overwhelming physical force rather than continuing verbal negotiations with an individual . . . who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation").

That principle does not apply. Even ignoring the obvious distinction that Defrates was not stopped for a minor traffic violation, Podany also did not immediately resort to overwhelming force in the face of no resistance; he used the type of "measured and ascending" force in the face of "escalating verbal and physical resistance" that this court has approved. *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). Let's start from the top. Johanson told Podany that he had asked Defrates to leave but that Defrates refused to do so. Johanson also asked Podany for help in removing Defrates from the building. After being told this, Podany confronted Defrates—who immediately identified Podany as a "cop."[4] Podany first attempted to negotiate with Defrates by

---

[4] At oral argument, much was made about whether Defrates knew Podany was a police officer or instead a security officer. But it does not matter what Defrates thought; what matters is what a reasonable officer would interpret, "I understand you are a cop," to mean. *See Griggs*, 841 F.3d at 313 ("A court must measure the force used under the facts as a reasonable officer *would perceive them*, not necessarily against the historical facts."). And a reasonable officer would interpret Defrates's phrase as recognizing his police authority. Given this, it is no wonder that Podany did not needlessly identify himself as a police officer

10

asking him to walk down the hall. When Defrates refused, Podany calmly turned him around against the wall. Defrates pushed back, so Podany pushed him more forcefully against the other wall. This time Defrates stayed there but fought (for about 30 seconds) Podany's attempt to secure his arms behind his back, all while verbally stating that he had done nothing wrong. After failing to secure Defrates's arms while standing, Podany was forced to escalate—this time by throwing Defrates to the ground. But Defrates still did not submit and attempted to get back up, so Defrates used a knee strike. After finally pinning Defrates down, Podany chose to use his bodyweight and a wrist hold to keep him there. This is unsurprising—especially since Podany had no handcuffs at his disposal. In short, Podany's actions were a measured and ascending response to Defrates's persistent resistance and did not therefore violate *Deville*'s clearly established rule.

Before moving on, we pause briefly to address the takedown in detail.[5] Of all the techniques Podany used, the takedown is the most jarring and seems to teeter precariously on the fence dividing reasonable from unreasonable force. Yet we must also examine the larger context before passing judgment on whether it violated clearly established law. While Defrates is not overly aggressive during his confrontation with Podany, Podany had other reasons to believe that Defrates could be volatile and dangerous. Defrates had a disturbing history with the school—a history of which Podany was aware: He knew Defrates was going through a divorce, posted troubling comments on Facebook, and could be suffering from PTSD in relation to his military service; he knew that Defrates had been issued criminal-trespass warnings; and he

---

throughout the encounter. It is also reasonable for Podany to interpret Defrates's resistance as resistance to a police officer, instead of resistance to a random civilian in a hallway.

[5] The "takedown" maneuver Podany used against Defrates involved wrestling Defrates to the ground, and as Defrates was attempting to get back up, kneeing Defrates in the neck/head area to keep him down.

knew that Defrates was the reason behind the active-shooter training requested by Johansen. Additionally, Podany could not be sure if Defrates was armed due to the blazer he was wearing.

Defrates has not pointed to any cases clearly condemning the use of a takedown in these circumstances. Specifically, he has pointed to no case addressing takedowns in a school context when an officer confronts a person whom he knows to be volatile and could possibly be armed—especially when that person is not complying with the officer's verbal and physical commands. In other words, Defrates has not established that no reasonable officer would have acted similarly.

Second, Defrates points to *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009). There, the court held that a knee strike used after the suspect was already in handcuffs counts as excessive, unreasonable force. *Id.* at 847. Presumably, Defrates thinks that *Peterson* clearly establishes that Podany's knee strike is also excessive. It does not. *Peterson* is narrow: It clearly establishes that a knee strike is excessive after the suspect is handcuffed and under control. *Id.* Yet Podany had no handcuffs and did not have control over Defrates when he kneed him in the shoulder/neck. *Peterson* does not place the answer to the question of whether Podany's knee strike was excessive beyond debate.

The next case up for Defrates is *Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005). In *Tarver*, the suspect was leaning against the inside of the backseat door to a police car. When the suspect's relative opened the door to let in some air, the suspect's head tumbled out. An officer scurried over and slammed the door on the suspect's head. *Id.* at 749. The court held that under the suspect's facts, the officer had intentionally and angrily slammed the door when nothing indicated that the suspect was trying to escape. *Id.* at 753. Accordingly, the court found the officer's actions unreasonably excessive. *Id.*

No. 18-11177

We fail to see how *Tarver* has any relation to this case. Defrates says that both involve head injuries. True. But this is where the similarities end. *Tarver* does not speak to the proper force an officer should deploy when faced with a troubled, uncompliant, and unsecured suspect. Rather, it (like *Peterson*) addresses a situation where the suspect is already under police control and is no longer a safety or escape risk.

Finally, there is *Payne v. Dickerson*, 334 F. App'x 629 (5th Cir. 2009) (per curiam). In that case, the officer threw a suspect headfirst into a ditch after the suspect moved in front of his passenger door to stop the officer from searching the car. *Id.* at 631. This case is of no help to Defrates. For starters, it is unpublished. To be clearly established, a legal principle must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Wesby*, 138 S. Ct. at 589–90 (quotation omitted). Our unpublished cases do not create controlling precedent. *See* FIFTH CIRCUIT RULE 47.5. And one unpublished case is a far cry from a robust consensus of persuasive authority.[6] Even if it were controlling, *Payne*'s facts do not squarely govern this case's specific facts, which we need not belabor anymore.

\* \* \*

Were Podany's actions a model of police conduct? Possibly not. Could Podany have used more verbal commands before tackling Defrates? Maybe. And could he have tried a little longer to control Defrates's arms? Perhaps. But our job is not to decide the best course of action. Our job is to determine whether Defrates has identified law clearly placing the unreasonableness of Podany's actions under the circumstances beyond debate. That is an uphill battle for any plaintiff. "[T]he *United States Reports* teem with warnings about

---

[6] We note that this court has not even mentioned (much less relied on) *Payne* in a single decision since it was decided in 2009.

the difficulty of placing a question beyond debate." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Defrates has not risen to the challenge; Podany's qualified immunity remains intact. We AFFIRM the judgment of the district court.